1

2 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
3 AT SEATTLE

FILED _____ ENTERED
LODGED _____ RECEIVED

SA JAN 29 2003

4 UNITED STATES OF AMERICA )
)
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY
5 Plaintiff, )
) BY
6 vs. ) Case CR02-175Z
) January 24, 2003
7 SEMI OSMAN, ) 1:35 p.m.
)
8 Defendant. )
_____ )
9

# ORIGINAL

10

11

12 TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE THOMAS S. ZILLY
13 UNITED STATES DISTRICT JUDGE

14

APPEARANCES:
15

On Behalf of the United States:   ANDREW HAMILTON
16                                   TODD GREENBERG
                                    Attorneys at Law
17
On Behalf of the Defendant:        ROBERT LEEN
18                                   Attorney at Law

19

20
Caroline R. Castle
21 Official Court Reporter
(206) 553-1899
22

23
Proceedings recorded by mechanical stenography; transcript
24 produced by computer.

25

CR 02-00175 #00000049

1    Seattle, Washington; Friday, January 24, 2003; 1:35 p.m.

2        THE CLERK:  Case CR02-175Z, United States versus Semi

3    Osman.  Counsel, please make your appearance.

4        MR. HAMILTON:  Good afternoon, Your Honor.

5    Representing the United States, Andrew Hamilton and Todd

6    Greenberg.  And also from the Immigration and Naturalization

7    Service, Derrick Smalley.

8        THE COURT:  Good afternoon.

9        MR. LEEN:  Good afternoon, Your Honor.  Robert Leen

10   appearing on behalf of the defendant, Semi Osman.

11       THE COURT:  Good afternoon.  All right.

12   This matter comes before the Court for sentencing.  The

13   government had previously moved to continue the sentencing.  And

14   after we determine the guideline range, I'll at least entertain

15   the government's rearguing that issue.

16   But I denied it because depending upon what the guideline

17   range is, it may well be that the defendant's sentence will be

18   in a range that would make him eligible to be discharged prior

19   to the time the government wished to detain him for purposes of

20   testimony.

21   So that was the reason the Court initially denied the

22   motion.  I'll reconsider it after we have determined what the

23   guideline range is.

24   All right.  Did the defendant receive the pre-sentence

25   report and sentencing recommendations of Probation?

```
 1              MR. LEEN:  He did, Your Honor.

 2              THE COURT:  All right.  And in addition, I have

 3    received and reviewed a copy of the plea agreement that was

 4    filed under seal, the government's sentencing memorandum filed

 5    under seal and the defendant's sentencing memorandum, also filed

 6    under seal.

 7         Is there anything else I should have received and reviewed?

 8              MR. LEEN.  Not from the defense, Your Honor.

 9              THE COURT:  And the pre-sentence report was revised as

10    of January 17th.  You got the revisions?

11              MR. LEEN:  Yes, Your Honor.

12              THE COURT·  All right.  Are there any factual disputes

13    with the facts stated in the pre-sentence report?

14              MR. LEEN:  From the--Your Honor, from the defense

15    perspective some of the facts regarding whether or not Mr. Osman

16    is an illegal alien in this country or he's a lawful resident

17    alien, those facts--if the Court is going to rely on them, we

18    will dispute them.

19              THE COURT:  Well, I'm going to rely on everything in

20    that pre-sentence report unless I strike it from the

21    pre-sentence report.

22              MR. LEEN:  Well, I've identified to Probation--I better

23    get the exact report.  That we felt that the--one second, Your

24    Honor.

25         The Court should not rely on the facts set forth in
```

1   paragraphs 8, 9, 10, 11, 12, 13, 15, 16.

2           THE COURT:  Why not?

3           MR. LEEN:  Your Honor, the defendant is charged and has

4   pled guilty to possession of a firearm with an obliterated

5   serial number.  The other charge to which these facts relate

6   deals with, in a very ancillary way, the other count which was

7   dismissed.  That charge was attempting to procure citizenship by

8   fraud.  And if you're going to use these facts to decide whether

9   or not Mr. Osman attempted to procure citizenship by fraud,

10  you're certainly entitled to do so.  And that's what the law

11  says.

12      If you find by a preponderance of the evidence that he

13  committed that crime, then you may take it into account at the

14  time of sentencing.

15          THE COURT:  Well, I think it's a little different than

16  what you say.  The question is whether or not he is a, quote,

17  prohibited person, as defined by law, for purposes of whether I

18  assess a two-point upward adjustment in his calculations for

19  sentencing.

20          MR. LEEN:  Yes, sir.

21          THE COURT:  The Probation Office has recommended I do

22  that.  And I'm rather inclined, based on the facts in the

23  pre-sentence report, to do just exactly that.

24      So they are important for that purpose.  It's not to

25  determine whether he committed a crime or not a crime.  The

1   question is whether he is a prohibited person.

2        MR. LEEN: And, Your Honor, that, I think, is not

3   what's appropriate to do at the time of sentencing.  In fact, I

4   think that implicates some very serious Constitutional

5   questions.

6        Whether or not--Mr. Osman is a lawful resident alien.  Now,

7   whether or not he should be removed from that status--such as if

8   he were a United States citizen and there was some penalty for

9   the offense if he was not a United States citizen.  Do we deem

10  he's not a United States citizen?  Do we deem he's not a lawful

11  resident alien?

12       The first instance is within the jurisdiction of the

13  Executive Office of Immigration Appeal.  That's the Executive

14  Office that's supposed to deal with that.  This court does not

15  have original jurisdiction to make such a decision.  You have an

16  appellate jurisdiction, when that decision is made, to see if it

17  comported with due process.  But whether or not he's going to

18  lose his resident alien status is entirely different than

19  deciding whether he committed a crime or not.

20       THE COURT:  Well, I'm not going to rule one way or

21  another on whether he's going to lose his alien status or his

22  immigration status.  But I am going to rule on whether he's a

23  prohibited person, because the guidelines require me to do that.

24       Now, let's go back to the facts in the pre-sentence report.

25  Take it paragraph by paragraph.  What is it that--I mean, there

1   is no question that he's married twice.  Right?

2           MR. LEEN:  He's married twice.

3           THE COURT:  All right.  And apparently has admitted to

4   the INS that with respect to the first marriage that--he was

5   interviewed by the INS.  I'm referring specifically to paragraph

6   16, because it's pretty important.

7       He apparently admits in a sworn statement that he gave to

8   the INS that he married Curly Britt in order to gain immigration

9   status and that the marriage was never consummated and that he

10  paid Britt and a Patrick Cesay (phonetic) for their roles and

11  that he knew the sham marriage was a crime.

12          MR. LEEN:  We deny that those are truthful facts.

13          THE COURT:  Well, you may deny they're truthful facts.

14  But did he say that to the INS or not?

15          MR. LEEN·  No.

16          THE COURT:  And there's no sworn statement.  Is that

17  what you're telling me?

18          MR. LEEN:  He made a statement, but he did not say that

19  in his sworn statement.

20          THE COURT:  Well, do we have the sworn statement,

21  Mr. Hamilton?

22          MR. HAMILTON:  Your Honor, we don't have it here at

23  this time.

24          THE COURT:  Why not?

25          MR. HAMILTON:  Your Honor, we did not know that this

1  was going to go to an evidentiary hearing today.

2          THE COURT:  Well, I didn't either.

3          MR. HAMILTON:  All right.

4          THE COURT:  But you knew from the pre-sentence report

5  what the issues were.

6          MR. HAMILTON:  I did, Your Honor.

7          THE COURT:  And one of the issues is whether he's a

8  prohibited person.  Is that right?

9          MR. HAMILTON:  That's correct.

10          THE COURT:  And what's the government's position on

11  that subject?

12          MR. HAMILTON:  Well, I'd like to start off by talking

13  about a possible continuance, if the Court wants to hear about

14  that.

15          THE COURT:  I want to hear about your position on

16  whether he's a prohibited person or not.

17          MR. HAMILTON:  Your Honor, at the time the parties

18  entered into this agreement, the parties agreed that the

19  appropriate guideline range was a 12.

20          THE COURT:  Say it again?

21          MR. HAMILTON.  A 12.

22          THE COURT:  A 6 to 12 months guideline.

23          MR. HAMILTON:  An offense level of 12 with--after the

24  acceptance of responsibility reduction, he would face a

25  guideline range of 6 to 12 months.

1          THE COURT:  All right.

2          MR. HAMILTON:  We've talked to Probation.  I understand

3     that Probation believes that Mr. Osman was a prohibited person,

4     and that would raise his offense level two points.  But if the

5     Court wants to know--at the time of the plea agreement, we

6     agreed with the defense that he was not a prohibited person.

7          THE COURT:  And I'm not bound by that agreement.

8          MR. HAMILTON:  Correct.

9          THE COURT:  And he was told that at the time of his

10    plea agreement.

11         MR. HAMILTON:  Correct.

12         THE COURT:  All right.  So the question is, is he a

13    prohibited person?

14         MR. HAMILTON:  Well, Your Honor, to resolve that issue

15    I think we'd have to have an evidentiary hearing.  And I would

16    ask the Court, if the Court wants to follow that, to continue

17    this until next week.  We will have our evidence, we'll put on

18    live testimony and we'll deal with that.

19         But before we get to that point, I really think it's

20    important if the Court will entertain our motion to continue the

21    sentencing.  And I've already outlined to Your Honor in a memo

22    the reasons why it's important that this defendant remain

23    incarcerated at least for the next two to three months.

24         Add to that something that I have not indicated to the Court

25    in writing.  It's my understanding there's an INS detainer on

1 Mr. Osman at this time. If he is released from custody, he's

2 going to immediately go into INS custody, and they're going to

3 begin deportation proceedings. Now, that causes the government

4 obvious concerns--

5 THE COURT: Well, it's the same government, isn't it?

6 They're not going to deport him until you tell them it's okay, I

7 assume. That argument doesn't have any weight with me.

8 MR. HAMILTON: I wish that it were as streamlined as

9 that. I'm just telling you, that's a problem.

10 Our request is that we continue this hearing at least until

11 April. That was contemplated by the parties in the plea

12 agreement. If the Court agrees that the range is 6 to 12, it

13 means that if he was sentenced in April to time served, he would

14 have a sentence of 11 months. If the Court determines that he

15 is a prohibited person, then we're not even at the low end of

16 that range.

17 THE COURT: Well, but if I conclude that it's 6 to 12

18 months as you apparently are suggesting, there's no reason--I

19 don't know what the sentence will be, but it may well be time

20 served. He's already been in custody for 7 or 8 months, has he

21 not?

22 MR. HAMILTON: That's correct.

23 THE COURT: You're asking me to hold him in custody for

24 several more months with the idea that I might have a sentence

25 for him ultimately that's less than the time he's in custody.

1  That doesn't seem fair to me, Mr. Hamilton.

2  MR. HAMILTON: Your Honor, it's in the plea agreement.

3  The parties agreed to that procedurally. The parties agreed to

4  a continuance of up to a year. At the time he entered his plea

5  of guilty, he contemplated the possibility of spending up to a

6  year in custody.

7  And it is fair because of the deal that was entered into.

8  The advantages to Mr Osman occurred at the front end of this

9  prosecution. Count 1 of the charges were dropped.

10  And so I just want to assure--

11  THE COURT: Well, let me understand your position and

12  then I'll hear from Mr. Leen.

13  The government does have him testifying at a trial in March.

14  Is that right?

15  MR. HAMILTON: There's a trial in March and a trial in

16  June. And we recognize that he's not going to be incarcerated

17  as long as June. We accept that. But we think it's important

18  that for the March trial for different reasons, it's

19  appropriate. It's important to the defendant's interests, as

20  well as the government's interests. And that trial date is

21  March 31st before Judge Coughenour.

22  THE COURT: All right. Mr. Leen? The plea agreement

23  does expressly provide--and I knew that when I denied the motion

24  before. But I am troubled by the fact that the plea agreement

25  expressly provides--let me find the language--

| | |
|---|---|
| 1 | MR. LEEN: Yes, sir. |
| 2 | THE COURT: Well, I'm not quickly finding it. But he |
| 3 | agreed here in writing somewhere that the sentencing could be |
| 4 | continued for up to a year. |
| 5 | MR. LEEN: That's on 15(e), Your Honor. Page 7. |
| 6 | THE COURT: Thank you. Defendant agrees that his |
| 7 | sentencing date may be delayed based on the United States' need |
| 8 | for his continued cooperation and agrees not to object--agrees |
| 9 | not to object to any continuance of his sentencing date sought |
| 10 | by the United States. |
| 11 | Now, how can you object if you've agreed not to object? |
| 12 | MR. LEEN: I certainly can't. But then again, my |
| 13 | agreement with the government's not binding on the Court either. |
| 14 | I would just point out to the Court that Mr. Osman can |
| 15 | remain at the Federal Detention Center in INS custody. They |
| 16 | have many INS prisoners. They move people around. So he can |
| 17 | remain there. |
| 18 | My concern is that this is being turned into a |
| 19 | cooperation--a 5K1-type of cooperation plea agreement, when it |
| 20 | really isn't. Mr. Osman has agreed, as any citizen should, to |
| 21 | testify truthfully to matters that he knows. And he said he |
| 22 | would, and the government took him at his word. And it |
| 23 | anticipated that if he didn't, they could come forward to you |
| 24 | and say· He's not kept up his end of the bargain. We want to |
| 25 | void the plea agreement and go back to prosecute him for these |

1   crimes or others, if we feel that they're appropriate.

2       But I really think that there are strong arguments why it

3   would be wrong--not just wrong; error--for this court to make a

4   finding that he's a prohibited person.  Because his status is

5   not unclear.  He is a lawful resident alien, which means he has

6   the right to live here and came here from his original country--

7       THE COURT:  You've moved off of the motion to continue

8   the sentencing to the merits, and--

9       MR. LEEN:  I just don't want--

10      THE COURT:  You'll have a chance to be heard on that

11  subject.

12      But your client did agree not to object.  The motion of the

13  government has asked for continuance.  I'm not bound by that

14  agreement.  But how can you possibly object?

15      MR. LEEN:  Well, it was denied, Your Honor.  And, you

16  know, we're used to hearing that word all the time.  But when

17  you deny my motion, I don't file it again and say, you know:  I

18  think--so it was denied.  That was ruled on.

19      THE COURT:  All right.

20      The Court is going to do this.  I am going to set up an

21  evidentiary hearing.  I do believe that it is necessary to

22  determine whether or not he's a prohibited person under the

23  statute.  The facts stated in the--I have to tell the defendant

24  that the facts stated in the pre-sentence report, if true,

25  certainly in my opinion would strongly suggest that he was a

1 prohibited person under the statute. But I've not had briefing

2 on that particular clause. I don't know whether the facts

3 stated in the pre-sentence report are all true.

4 And what needs to be done is we need to have an evidentiary

5 hearing, so I can determine what the guideline range is. Once I

6 have determined that--I hoped that I could have done that

7 today--then I would be better informed as to whether to give a

8 continuance to the government of the sentencing, notwithstanding

9 the plea agreement.

10 If the Court concludes that a sentence less than what he's

11 already served is the appropriate sentence, then I would be

12 reluctant to hold him in custody. He's agreed to testify.

13 He'll be in government custody, and I'm sure that the government

14 can find him when they need him.

15 So let me ask, Madam Clerk, how we look next--

16 (Discussion off the record.)

17 THE COURT: How long does the government think--how

18 many witnesses do you think you're going to need to call?

19 MR. HAMILTON: I think an hour, Your Honor.

20 THE COURT: All right. We'll set it for 10 o'clock

21 next Thursday.

22 MR. LEEN: Your Honor, I might have a witness. So

23 would we have like a half an hour if we need it?

24 THE COURT: Yes. Mr. Hamilton, do you have--does the

25 INS have a written statement from the defendant, a sworn

1 statement?

2 MR. HAMILTON: We do have a written statement.

3 THE COURT: Has that been provided to Mr. Leen?

4 MR. HAMILTON: Yes.

5 THE COURT: I guess I'm the only one that hasn't seen

6 it. Be helpful if you could provide me with a copy before next

7 Thursday, as well.

8 MR. HAMILTON: Yes, Your Honor.

9 THE COURT: I'm going to continue the sentencing at

10 least until next Thursday. And I may continue it further, at

11 least past the March 31st deadline, but I'm just not sure. I

12 need to focus in on this prohibited person, determine what the

13 guideline range is. And then depending upon what I determine

14 and what I think the appropriate sentence is, I will or will not

15 continue the sentencing further next week.

16 Anything further we can accomplish today on this matter?

17 MR. HAMILTON: No, Your Honor.

18 MR. LEEN: Just--submit a brief by--would Wednesday be

19 all right? Thank you.

20 THE COURT: All right. We'll be in recess on this

21 matter. Let's call the next matter on the calendar.

22 (The proceedings concluded at 1:55 p.m.)

23

24

25

1    CERTIFICATE
        I, Caroline R. Castle, court reporter for the United States
2   District Court in the Western District of Washington at Seattle,
    was present in court during the foregoing matter and reported
3   said proceedings stenographically.
        I further certify that thereafter, I, Caroline R. Castle,
4   have caused said stenographic notes to be transcribed via
    computer, and that the foregoing pages are a true and accurate
5   transcription to the best of my ability.
        Dated this 29th day of January, 2003

6                                        _Caroline R. Castle_

7                                        Caroline R. Castle

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25